Nott, J.,
concurring:
I do not disagree so much from the practical conclusion which the majority of the court have reached as from the principles upon which the decision is allowed to rest.
It is the fundamental law of the United States, declared by its highest tribunal, that the legislative, executive, and judicial departments of the Gpvernment shall be, each in its sphere, independent of the others, (Klien’s Case, 7 O. 01s. B.., 240,) and, .in the language of the Supreme Court, “ it is of vital importance that these powers he Icept distinct.” The decision in this case, I think, trends upon the proper sphere of the Executive, and attempts to draw within the jurisdiction of the judiciary those matters which the Constitution places exclusively within the control and judgment of the President.
The decision of the court rests upon the 'premise that an offi *599 cer of the Army had resigned, that his connection with the Army had been severed by the acceptance of his resignation, and that the judiciary may pass upon the legality of the method by which he was restored to the service. But this assumption involves the entire legal consequences of the case. Whether an officer of the Army has resigned or has not resigned is a question which the judiciary cannot try. A certain piece of paper is indeed before the court, bearing the appearance of a resignation; but whether it was such or not, the President alone could decide. The Constitution and the laws thereunder relating to the Army leave the determination of that question exclusively with the Executive, and the judiciary must take the fact as he decides it to be.
It is conceded that if the President should accept a resignation in form, which was not a resignation in fact, he might revoke his acceptance and restore the officer to his position. If the presumed resignation were a forgery or the writing of one actually insane, no one disputes but that the President might undo that which he erroneously .. Conversely, if the President should refuse to annul his acceptance, I apprehend that no one would say that the judiciary could inquire into the matter, and hold the resignation a nullity and the acceptance void, and the officer still in the service. But these admissions are only another form of saying that the President is the exclusive judge of what is and of what is not a resignation.
And that is the question involved in this case. A paper was left in escrow with an officer. In form it was imperfect and incomplete. The holder was authorized to perfect it in a certain contingency, and transmit it for the Executive’s action. Before it could become a resignation — that is to say, the legal act of the person executing it — those specified conditions had to be complied with. It was transmitted to the President. The blank in it had been filled. The contingency was said to have happened; but whether all of this was so, and whether it in fact became a resignation, are issues which no court of law is authorized to try. Those issues were submitted to the only power having authority to deal with them, and that power in fact determined that the resignation was no resignation, and that the previous acceptance was error and should be annulled. Can the judiciary now assume to try the question whether the President erred in his judgment 1 Can it decide *600 that, in the matter of an officer’s connection with the Army, its judgment is better than that of the Executive ?
The legal peculiarity of the military service is that whoever enters it cuts himself off, so far as profession and calling are concerned, from judicial redress, and indeed from all civil rights. He cannot go or come where he would; his time, his preferment, his compensation, his liberty, and indeed his life, are subject to the disposal of one man. No courts are open to him as a soldier. His acquittal by a court-martial is nothing until approved by the power above, and may be annulled, and even reversed. Further than this, the President may also end his professional career by a word, and by his simple order dismiss him from the service. From a civilian’s point of view these powers are immense, and the surrender of these rights the severest hardship. But every one knows that this is the state of the case, and no one doubts that all of these powers are actually confided to the Oommander-in-Ghief.
And it is indispensable that this remain so. The judiciary can never undertake to determine these questions. It must take the status of an officer as it is left by the only power having the authority to determine it 5 and when, as in this case, that power decides that a resignation was not a resignation, and that its acceptance shall be revoked, the courts must receive that action as conclusive.
It is true that there is a statute which regulates resignations, and in effect declares that an officer shall not be out of the Army until his resignation has been accepted and he notified of it. But this statute does not affect the power of the President. Its design or purpose is merely to prevent an officer from severing his connection with the Army on his own motion. It keeps him in the Army until the President permits him to go out. It is also true that there is here a veritable paper, in form and terms a resignation. But it appears at the same time, aliunde the written instrument, that the writer did not deliver it to the President, and that without the happening of certain events it in contemplation of law never was delivered. It was not a forgery, it was not the writing of a lunatic, it was not procured by duress, it was not stolen from the officer’s trunk, and yet there was something to be determined before it became the officer’s obligatory act. That extrinsic fact had to be determined by somebody, and that somebody was the President, *601 and it was lawful and eminently just for bim to allow the officer a hearing in regard to it.
Taking this case as I find it — that is, taking the status of the officer as the President has declared it to be — I find that Captain Mimmack did not resign in May, 1868, and that on .the 24th December, the day of the President’s final act of revocation, he was still a captain in the Thirtieth Eegiment of Infantry-Pursuing the inquiry, I find, by the action of the President, that on the 6th day of December, 1869, he ceased to be an officer in the service. It is true that the President did not then in form dismiss him, but the President might have done so, and his decision that Captain Mimmack was not then in the service bound Captain Mimmack and binds this court.
It was urged by the claimant’s counsel that the object of the-suit was to establish the fact that Captain Mimmack has been and still is an officer in the Army. I fully agree with the majority [of the court- that no such suit can be maintained, and that no such question can be tried. Neither under the statute conferring our jurisdiction, nor in any court of the common law, nor in any proceeding by the petition of right, was it ever heard that a man could bring his action against the Government or against the Crown to obtain possession of an office. As regards certain civil offices, one individual may bring an action against another individual for ouster, but never has it been supposed that any person could bring such an' action against the state. The position of the claimant, and the position of the majority of the court, though at variance, both singularly rest upon the same foundation, and that is that the judiciary can assume the powers of the Executive, and determine whether an individual holds or does not hold a military office. - For the same reason that I dissent from the majority of the court, I decide against the demand of the claimant.
Eichaedson, J., was absent when this case was decided.